UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

American Camshaft Specialties, Inc., et al[1]

               Debtor.
_____ /

Basil Simon, Chapter 7 Trustee for
American Camshaft Specialties, Inc.,
Assembled Camshaft, Inc., ASC Grand
Haven, Inc. and ACS Orland, Inc.,

               Plaintiff,

v.

ASIMCO Technologies, Inc.,
ASIMCO Technologies Holding Limited,
ASIMCO International, Inc.,
ASIMCO Camshaft (Yizheng) Co., Ltd.,
Jack Perkowski, Michael Conaton,
Leland Lewis, Robert Longwell,
Kern Lim and Robert Pyle,

               Defendants.
_____/

Case No. 06-58298
Chapter 7
Hon. Phillip J. Shefferly
Jointly Administered



Adv. Pro. No. 08-5622

## OPINION GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

### Introduction

      The Chapter 7 Trustee for four jointly administered estates filed an eight count adversary

proceeding against four corporations related to the Debtors and against six individuals who are

members of the board of directors of each of the Debtors. Two of the corporate defendants have

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: American
Camshaft Specialties, Inc., Case No. 06-58298; Assembled Camshaft, Inc., Case No. 06-58330;
ACS Orland, Inc., Case No. 06-58301; and ACS Grand Haven, Inc., Case No. 06-58302.

moved to dismiss the complaint because of insufficiency of service of process upon them. One of the corporate defendants and one of the individual defendants have moved to dismiss the complaint because of lack of personal jurisdiction over them. All of the individual defendants have moved to dismiss count I. All of the corporate defendants have moved to dismiss count II. This opinion addresses all of these motions.

<u>Jurisdiction</u>

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (H).

<u>Facts</u>

The following facts are not in dispute. On December 9, 2006, four related companies each filed a voluntary petition for relief under Chapter 11. The principal business of the Debtors pertained to the design, production and sale of steel and iron camshafts for original equipment manufacturers in the automotive industry. The names of the four Debtors are:

American Camshaft Specialities, Inc., a Delaware corporation ("American Camshaft");

Assembled Camshaft, Inc., a Delaware corporation ("Assembled Camshaft");

ACS Orland, Inc., a Delaware corporation ("Orland"); and

ACS Grand Haven, Inc., a Delaware corporation ("Grand Haven").

At the time that the Debtors filed their Chapter 11 petitions, Assembled Camshaft, Orland and Grand Haven were all wholly owned by American Camshaft. American Camshaft was a non-manufacturing entity that provided funds and services to its subsidiaries. Of the three subsidiaries, only two were operating at the time that the Chapter 11 petitions were filed. Assembled Camshaft operated in Grand Haven, Michigan and assembled product for Chrysler. Grand Haven also

-2-

operated in Grand Haven, Michigan and produced steel and iron camshafts for various customers. Orland had ceased its business operations in 2003.

At the time that the bankruptcy cases were filed, American Camshaft was wholly owned by ASIMCO Technologies, Inc. ("ASIMCO Technologies"). ASIMCO Technologies is a Delaware corporation that is a holding company for American Camshaft and for various other entities that did not file bankruptcy cases. ASIMCO Technologies in turn is a wholly owned subsidiary of ASIMCO Technologies Holding Limited ("ASIMCO Holding"). ASIMCO Holding is a Cayman Islands corporation that is the ultimate parent of the Debtors and numerous other corporations in the United States, the Cayman Islands and China. Jack Perkowski was the president of each of the Debtors as well as the Debtors' parent, ASIMCO Technologies, and the Debtors' ultimate parent, ASIMCO Holding. The Debtors, their parent, ASIMCO Technologies, and their ultimate parent, ASIMCO Holding, shared the same board of directors. Some of the other corporations within the family of ASIMCO companies that were ultimately owned by ASIMCO Holding were engaged in similar business activities as the Debtors in China and in other countries. Those companies did not file bankruptcy cases when the Debtors filed their Chapter 11 cases.

On December 14, 2006, at the request of the Debtors, the Court entered an order in each of the four Chapter 11 cases providing for joint administration of the four cases under Fed R. Bankr. P. 1015(b). Those orders enabled the four Debtors to have their cases jointly administered for procedural purposes only but did not provide substantive consolidation of the four cases.

The Debtors sought and obtained post-petition financing from Citizens Bank to continue their business operations. Financing orders setting forth the terms of the post-petition financing were entered by the Court after notice and opportunity for all parties to be heard. The Debtors

continued their operations post-petition to prevent an interruption in production for their customers. The customers in turn provided certain financial accommodations to assist the Debtors in obtaining the post-petition financing from Citizens Bank. The Debtors then sought to obtain a purchaser for their business operations. The Debtors and the creditors' committee each engaged professionals to assist in the sale process. Although the Debtors did not find a single purchaser of all of their assets as a going concern, the Debtors' assets were sold in various sales approved by the Court upon motions filed by the Debtors. After substantially all of the Debtors' tangible assets were sold in § 363 sales, the Court converted all four Chapter 11 cases to Chapter 7 on October 9, 2007 when the Debtors failed to file a Chapter 11 plan by the deadline first set and then extended by the Court. Basil Simon was appointed Trustee in each of the four Chapter 7 cases. The four Chapter 7 cases continue to be jointly administered. Except for the complaint filed in this adversary proceeding, there has never been a request made by any party to substantively consolidate any of the four bankruptcy cases with each other.

After the Trustee was appointed in each of the four cases, the Trustee brought numerous adversary proceedings to set aside fraudulent transfers, preferential transfers and to seek other Chapter 5 remedies. On December 9, 2008, the Chapter 7 Trustee filed this adversary proceeding. The Trustee is represented in this adversary proceeding by the same law firm that represented the creditors' committee during the time that the four cases were in Chapter 11. The adversary proceeding complaint names four non-debtor corporations as defendants. One of the corporate defendants is ASIMCO Technologies, the parent of American Camshaft, and another is ASIMCO Holding, the ultimate parent of all of the Debtors. The third corporate defendant is ASIMCO Camshaft (Yizheng) Co., Ltd., a Chinese corporation ("Yizheng"). Yizheng makes castings and

-4-

other products in China that are similar to those products that were previously made in Grand Haven, Michigan by Assembled Camshaft and by Grand Haven. ASIMCO Holding is the ultimate parent of Yizheng. The fourth corporate defendant named in the adversary proceeding is ASIMCO International, Inc., a Delaware corporation ("ASIMCO International"). The complaint does not explain what ASIMCO International does but does state that it is wholly owned by ASIMCO Technologies.

The complaint also names six individual defendants: Jack Perkowski, Robert Pyle, Michael Conaton, Leland Lewis, Robert Longwell, and Kern Lim. The complaint alleges that all six individual defendants are officers and members of the boards of directors of each of the Debtors as well as the four non-debtor corporate defendants.

The complaint contains eight separate counts. Count I seeks relief against the six individual defendants for breach of fiduciary duty. Count II seeks an order of substantive consolidation of the four non-debtor corporate defendants with the Debtors. Count III seeks recovery of a preferential transfer under § 547 of the Bankruptcy Code from ASIMCO International in the amount of $833,299.80. Count IV seeks recovery of an unauthorized post-petition transfer under § 549 of the Bankruptcy Code from ASIMCO International in the amount of $98,795.57. Count V seeks recovery of a preferential transfer under § 547 of the Bankruptcy Code from Yizheng in the amount of $524,920.00. Count VI seeks recovery of an unauthorized post-petition transfer under § 549 of the Bankruptcy Code from Yizheng in the amount of $58,300.00. Count VII seeks recovery of fraudulent transfers under § 548 of the Bankruptcy Code from Yizheng in the total amount of $824,092.79. Count VIII seeks recovery of fraudulent transfers under § 548 of the Bankruptcy Code from ASIMCO International in the total amount of $833,299.80.

ASIMCO Holding has moved to dismiss the entire complaint against it because of lack of service of process and because of lack of personal jurisdiction over it. Kern Lim has moved to dismiss the entire complaint against him because of lack of personal jurisdiction over him. Yizheng has moved to dismiss the entire complaint against it because of lack of service of process upon it. All of the individual defendants have moved to dismiss the breach of fiduciary duty claim against them in count I. All of the non-debtor corporate defendants have moved to dismiss the substantive consolidation claim against them in count II.

<u>Lack of Service of Process on ASIMCO Holding and Yizheng</u>

ASIMCO Holding and Yizheng argue that the complaint must be dismissed as to them under Fed. R. Civ. P. 12(b)(5), incorporated in this adversary proceeding by Fed. R. Bankr. P. 7012, for insufficient service of process. Fed. R. Bankr. P. 7004(b)(3) governs service of an adversary proceeding complaint on a domestic or foreign corporation: "[S]ervice may be made within the United States by first class mail postage prepaid . . . by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ."

According to the certificate of service (docket entry # 3) filed by the Trustee, service was made on ASIMCO Holding and Yizheng by service on "Jack Perkowski, CEO," by first class mail on December 16, 2008, at 355 Rock Rd., E., Lambertville, N.J. 08530-3308. ASIMCO Holding and Yizheng do not deny that Perkowski received the summons and complaint mailed to him at that address. Instead, they each argue that Perkowski had resigned from the chief executive officer position with each of them early in October, 2008. Accordingly, they contend that Perkowski was not an officer at the time of service of process. Although they concede that Perkowski remained a

director of each of them at the time of service of process, ASIMCO Holding and Yizheng each argue that such position is not enough by itself for Perkowski to be considered a managing or general agent, the alternative individuals who may be served under Rule 7004(b)(3).

The Trustee contends that Perkowski was still listed as CEO of ASIMCO Holding and Yizheng as of December 1, 2008, according to an ASIMCO website that the Trustee consulted before filing and serving the complaint on December 16, 2008. The Trustee also notes that ASIMCO Holding and Yizheng have provided no supporting documents, such as an affidavit, a board resolution, press release, or resignation letter to evidence their claim that Perkowski resigned in October, 2008. The Trustee also cites an internet article from China Briefing News, dated January 17, 2009,[2] after the date of service of process, describing a company statement issued to ASIMCO employees announcing that, "effective immediately," Perkowski was stepping down as president and CEO. The Trustee contends that this article shows that Perkowski did not resign until January 17, 2009, long after service of process upon Perkowski. In the alternative, the Trustee argues that, even if service was somehow not proper, ASIMCO Holding and Yizheng received actual notice at the adversary proceeding, so that service of the summons and complaint was not needed.

Unlike a motion to dismiss under Rule 12(b)(6) or 12(c), the Court may consider matters outside the pleadings when addressing a motion to dismiss for insufficient service of process. See Harris v. Grand-O-Lac Co., 211 F.2d 238 (6th Cir. 1954) (relying on affidavits provided by the defendant and its agent in quashing service). ASIMCO Holding and Yizheng have provided the Court no evidence to corroborate their bare assertion that the Trustee mailed the summons and

---

[2] Http://www.china-briefing.com/news/2009/01/17/perkowski-leaves-asimco.html.
(Exhibit 3 to Trustee's Resp., docket entry # 12).

-7-

complaint to the attention of the wrong officer because Perkowski no longer held a position as an officer of either company at the time of service. In the absence of any support to the contrary, coupled with the Trustee's uncontroverted statement that Perkowski was still shown as CEO on the ASIMCO website, and corroborated by the January 17, 2009 article that appears to fix Perkowski's resignation as occurring on January 17, 2009, the Court finds that ASIMCO Holding and Yizheng were properly served on December 16, 2008 through service of process upon Perkowski as an officer of each of the corporations on such date. Therefore, this Court need not reach the Trustee's alternative argument regarding ASIMCO Holding and Yizheng having each received actual notice. Accordingly, ASIMCO Holding's and Yizheng's motion to dismiss for lack of service is denied.

<u>Personal Jurisdiction over ASIMCO Holding and Kern Lim</u>

ASIMCO Holding is incorporated in the Cayman Islands. It argues that the complaint contains no allegations relating to its conduct in the United States. Further, it argues that its ownership of a subsidiary doing business in the United States is not by itself sufficient to confer jurisdiction on it as the parent corporation. Lim argues that the complaint does not allege that Lim was ever a resident of the United States, nor does the complaint allege any specific conduct by him. ASIMCO Holding and Lim each ask that the complaint be dismissed under Rule 12(b)(2), incorporated by Fed. R. Bankr. P. 7012, for lack of personal jurisdiction over them.

The complaint alleges that both ASIMCO Holding and Lim acted in the United States. The complaint alleges that ASIMCO Holding held its board meetings in New York, and that a "super board" of the ASIMCO family of companies met there as well (paragraph 25). According to the complaint, because there were no separate meetings of the boards of the Debtors, the decisions concerning the management of the affairs of the Debtors were made at the New York super board

meetings. Lim, as a member of the board of each Debtor, is alleged to have attended these meetings (paragraph 20), and to have taken an active role in decision making at the meetings. The decisions made at the board meetings form the basis for the transactions and the consequences of those decisions that are central to the complaint. Further, the Trustee asserts that there are no unusual circumstances that would make the Court's exercise of personal jurisdiction over ASIMCO Holding and Lim unfair or unreasonable.

At oral argument, the Trustee acknowledged that Lim has not been served with the summons and complaint. The certificate of service filed by the Trustee does not show that the summons and complaint were mailed to Lim. Therefore, since Lim has never been served with the summons and complaint, the Court need go no further in deciding whether or not it has personal jurisdiction over Lim.

Fed. R. Bankr. P. 7004(d) allows for national service of a complaint and summons for adversary proceedings. Therefore, the "forum" to consider is the United States. Both sides use the Sixth Circuit test from <u>Southern Machine Co. v. Mohasco Industries, Inc.</u>, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

The Sixth Circuit has since found "the <u>Mohasco</u> test continues to provide a useful starting point for analyzing jurisdictional questions . . . ." <u>Kerry Steel, Inc. v. Paragon Industries, Inc.</u>, 106 F.3d 147, 150 (6th Cir. 1997). In <u>Kerry Steel</u>, the court focused on the first factor, noting that

> Supreme Court decisions have reinforced the centrality of [the purposeful availment]

factor. To be subject to *in personam* jurisdiction, the Supreme Court has said in a formulation somewhat more precise than that used in <u>Mohasco</u>, a defendant must "purposefully avail [ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

<u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)) (other internal quotation marks and citation omitted).

"The burden of establishing jurisdiction is on the plaintiff." <u>Third National Bank in Nashville v. WEDGE Group Inc.</u>, 882 F.2d 1087, 1089 (6th Cir. 1989) (internal quotation marks and citation omitted). In the context of a motion to dismiss, where the court is "relying solely on the pleadings, affidavits, and other written submissions[,] . . . the burden on the plaintiff is relatively slight . . . . [T]he plaintiff should be required only to make a prima facie case of jurisdiction, that is, he need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." <u>Id.</u> (internal quotation marks and citation omitted).

The first part of the <u>Southern Machine</u> test, "purposeful availment," "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" <u>Air Products & Controls, Inc. v. Safetech International, Inc.</u>, 503 F.3d 544, 551 (6th Cir. 2007) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). The complaint alleges that ASIMCO Holding is the ultimate parent of the Debtors and the other ASIMCO companies. The complaint further alleges that all the ASIMCO companies, including ASIMCO Holding, convened their board meetings through the "super board" meetings held in this forum, the United States, at which the affairs of the Debtors and the other corporate defendants were decided. This is not a random, fortuitous or attenuated contact. Nor were the super board meetings the unilateral activity of a third party. This activity by ASIMCO Holding is sufficient to meet the purposeful availment requirement.

Under the second element, "'[j]urisdiction is proper [ ] where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.' . . . [P]hysical presence in a forum state is not required . . . ." Id. (quoting Burger King v. Rudzewicz, 471 U.S. at 475) (citation omitted and emphasis in original). "'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact.'" Calphalon Corp. v. Rowlette, 228 F.3d 718, 723-24 (6th Cir. 2000) (quoting Southern Machine, 401 F.2d at 384 n.29).

The complaint emphasizes the relationship between ASIMCO Holding and the Debtors as parent and subsidiaries. ASIMCO Holding is correct that a parent/subsidiary relationship alone may not be sufficient to establish personal jurisdiction over the parent based on the actions of the subsidiary in the forum. See Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 296 (6th Cir. 1964) ("[T]he mere ownership by a corporation of all of the stock of a subsidiary amenable to the jurisdiction of the courts of a state *may not alone* be sufficient to justify holding the parent corporation likewise amenable.") (emphasis added). But the Trustee has not based personal jurisdiction over ASIMCO Holding only on the parent/subsidiary relationship. The complaint alleges that the Debtors did not have separate boards of directors, but instead shared a common board with all the ASIMCO entities. That "super board" met in New York and, at those meetings, decided the conduct and management of the Debtors' operations, including causing the Debtors to subsidize other ASIMCO family corporations, especially Yizheng (paragraphs 47-51); treating the Debtors as divisions of ASIMCO Holding (paragraph 30); causing the assets of the Debtors to be transferred to other ASIMCO family corporations for no consideration (paragraphs 45-52); and making undocumented inter-company loans (paragraphs 55-58). The complaint seeks to recover

preferential transfers, fraudulent transfers and unauthorized post-petition transfers; impose liability

on the officers and directors for breach of fiduciary duty; and substantively consolidate ASIMCO

Holding and the other corporate defendants with the Debtors.  The causes of action in the Trustee's

complaint arise directly from the alleged activities in the forum, meeting the second part of the

jurisdictional test.

The third question of the <u>Southern Machine</u> test is whether acts or the consequences of the

acts have a substantial enough connection to the forum to make the exercise of jurisdiction over

ASIMCO Holding reasonable.  The forum must have "an interest in resolving the conflict at issue;

but, once the first two questions have been answered affirmatively, resolution of the third involves

merely ferreting out the unusual cases where that interest cannot be found."  <u>Southern Machine</u>, 401

F.2d at 384.

> This requirement exists because minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. However, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. . . . In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the [controversy].

<u>Air Products & Controls</u>, 503 F.3d at 554-55 (internal quotation marks and citations omitted).

In its reply, ASIMCO Holding focuses on the fact that it is a foreign corporation that has

never maintained an office in the United States, the complaint alleges "only isolated contacts" with

the forum, and the burden it faces in defending itself in a foreign legal system.

When "the first two criterion [of <u>Southern Machine</u>] are met, an inference of reasonableness

arises and only the unusual case will not meet this third criteria." Id. at 554 (internal quotation marks and citation omitted). The Court is not convinced that this is that "unusual case." ASIMCO Holding has not presented a "compelling case" that would render jurisdiction unreasonable. The jurisdictional grounds in the complaint are not that ASIMCO Holding has an office in the United States. And the complaint alleges more than isolated contacts with the United States. The inconvenience and cost of defending itself in a forum in which it has purposefully availed itself of the privilege of acting, against charges related to its actions in that forum, are not unusual or compelling circumstances. The Court concludes that the Trustee has pleaded facts that support a finding of jurisdiction, sufficient to deny ASIMCO Holding's motion to dismiss.

Individual Defendants' Motion to Dismiss Count I for Failure
to State a Claim for Breach of Fiduciary Duty

The individual defendants rely on Fed. R. Bankr. P. 7012, which incorporates Fed. R. Civ. Rule 12. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), the Supreme Court addressed the standard under Rule 12(b)(6). Twombly does "not requir[e] a universal standard of heightened fact pleading, but [ ] instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Weisbarth v. Geauga Park District, 499 F.3d 538, 541 (6th Cir. 2007) (emphasis in original) (internal quotation marks and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability

-13-

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Id. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a
defendant's liability, it stops short of the line between possibility and plausibility of entitlement to
relief." Id. (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the
pleader is entitled to relief." Id. at 1950 (internal quotation marks and citation omitted).

In order to determine whether to dismiss count I, a preliminary determination must be made
as to what law applies to the alleged breach of fiduciary duty. Both sides agree that, as the state in
which the Court sits, the conflict of law rules of Michigan apply. "Michigan courts have not been
entirely consistent" in applying choice of law rules. Olmstead v. Anderson, 400 N.W.2d 292, 301
(Mich. 1987). "Since no specific methodology [has been] adopted, each case must be evaluated on
the circumstances presented." Id. at 302.

> Michigan law [applies] unless a "rational reason" to do otherwise exists. In
> determining whether a rational reason to displace Michigan law exists, [the court
> must] undertake a two-step analysis. First, [the court] must determine if any foreign
> state has an interest in having its law applied. If no state has such an interest, the
> presumption that Michigan law will apply cannot be overcome. If a foreign state
> does have an interest in having its law applied, [the court] must then determine if
> Michigan's interests mandate that Michigan law be applied, despite the foreign
> interests.

Sutherland v. Kennington Truck Service, Ltd., 562 N.W.2d 466, 471 (Mich. 1997); see also

Radeljak v. Daimlerchrysler Corp., 719 N.W.2d 40, 46 (Mich. 2006) (looking to "see which

jurisdiction has a greater interest in the case" and finding Croatian law applies over Michigan law

"because the case involves residents and citizens of Croatia who were injured in an accident in

Croatia"). The case should "be examined to determine whether the foreign elements are so

substantial as to override a presumption that forum law applies." Olmstead v. Anderson, 400

-14-

N.W.2d at 302.

The individual defendants acknowledge that Michigan does have an interest in the application of its laws, but argue that Delaware has a more significant interest. The individual defendants point to Delaware's "well-developed law regarding corporate governance issues," and conclude that the internal affairs doctrine requires application of Delaware corporate law. (Defs.' Br. at 11-12.)

> As a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation. Different conflicts principles apply, however, where the rights of third parties *external* to the corporation are at issue.

First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 621-22 (1983) (emphasis in original) (declining to apply Cuban law in a suit to recover on a letter of credit because to do so "would permit the state to violate with impunity the rights of third parties under international law while effectively insulating itself from liability in foreign courts").

Delaware has an interest in seeing that the directors of corporations incorporated in Delaware have the protection of Delaware laws. On the other hand, Michigan has a strong interest in policing corporations doing business within its borders, and protecting its citizens against harm done by foreign corporations and their directors. The Debtors conducted business in Michigan, their creditors are here, factories were closed here and jobs lost here. The injuries occurred here, allegedly as a result of the individual defendants' breach of duty. On the other hand, the individual defendants did not conduct business in Delaware and did not even hold their board meetings there. Delaware's interests are not "so substantial" that they override the presumption that Michigan law applies. The Court concludes that Michigan law applies to count I.

-15-

The complaint is not entirely consistent in identifying the fiduciary duty allegedly breached, at times appearing to refer to the duty of care, and at other times appearing to refer to the duty of loyalty. Paragraph 5 of the complaint specifically alleges a breach of the duty of loyalty. At the oral argument on this motion to dismiss, the Trustee conceded that the compliant does not plead a breach of duty of care, but instead alleges a breach of duty of loyalty.

Michigan law recognizes a fiduciary duty of loyalty for officers and directors of a corporation. See Digital Commerce, Ltd. v. Sullivan (In re Sullivan), 305 B.R. 809, 819 (Bankr. W.D. Mich. 2004) (citing the Michigan Business Corporation Act, Mich. Comp. Laws Ann. § 450.1541a(1), and finding the president of a corporation breached his fiduciary duty of loyalty when he usurped a corporate opportunity). In the context of a wholly owned subsidiary, the parent corporation "may not be permitted to place itself in a position where its interests conflict with the interests of the [subsidiary.]" Wagner Electric Corp. v. Hydraulic Brake Co., 257 N.W. 884, 886-87 (Mich. 1934) (citations omitted). A conflict giving rise to a breach of the duty of loyalty may arise either where an officer or director of the parent corporation acts for their own personal benefit, *or* acts for the benefit of another related or competitive corporation. Id.

The Trustee alleges in count I that the individual defendants, as directors and officers of the Debtors, breached that duty by managing the Debtors in such a way as to benefit the other corporations in the ASIMCO family to the Debtors' detriment. The complaint contains enough factual matter, required to be taken as true for purposes of this motion, to state a claim for relief under count I for breach of duty of loyalty that is plausible on its face. This is sufficient under the standard in Twombly to deny the individual defendants' motion to dismiss count I.

## Count II - Substantive Consolidation

In count II, the Trustee seeks an order providing for substantive consolidation of the four non-debtor corporate defendants and the Debtors. The complaint states that the Court has the equitable power to grant this relief under § 105 of the Bankruptcy Code. The complaint then identifies a number of factors that the Court should examine to determine whether substantive consolidation is warranted. In their motion to dismiss, the non-debtor corporate defendants appear to concede that a bankruptcy court has the power to order substantive consolidation, but argue that count II in the complaint must be dismissed because the Trustee has not sufficiently pleaded facts necessary to support a cause of action for substantive consolidation under a leading case on substantive consolidation, Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515 (2nd Cir. 1988). The corporate defendants note that there is no controlling decision by the Sixth Circuit Court of Appeals establishing the necessary elements for a cause of action for substantive consolidation, but point out that the Augie/Restivo analysis was followed by the District Court for the Eastern District of Michigan in Simon v. New Center Hospital (In re New Center Hospital), 187 B.R. 560 (E.D. Mich. 1995). The corporate defendants explain that Augie/Restivo formulates two alternative bases for invoking substantive consolidation: "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." Augie/Restivo, 860 F.2d at 518 (internal quotation marks and citations omitted). The corporate defendants assert that count II of the Trustee's complaint fails to allege sufficient facts under either prong of Augie/Restivo.

The Trustee's reply begins by agreeing with the corporate defendants' statement that § 105

of the Bankruptcy Code provides the Court with equitable power to order substantive consolidation, even of a non-debtor with a debtor. Without a Sixth Circuit statement of the elements of substantive consolidation, the Trustee also looks to <u>Augie/Restivo</u>. The Trustee argues that his complaint states a cause of action under either prong of <u>Augie/Restivo</u>, but also asserts that his complaint states a cause of action under the substantive consolidation test articulated in <u>Drabkin v. Midland-Ross Corp.</u> (<u>In re Auto-Train Corp.</u>), 810 F.2d 270 (D.C. Cir. 1987). The Trustee points out that the <u>Auto-Train</u> test was also discussed in <u>New Center Hospital</u>.

Although both the corporate defendants and the Trustee rely heavily on <u>Augie/Restivo</u> and <u>New Center Hospital</u>, they each also cite to a number of other cases that discuss the concept of substantive consolidation, some involving substantive consolidation of a non-debtor with a debtor. A number of these cases articulate "tests," or list "factors," or identify "circumstances," that must be shown in order to warrant an order of substantive consolidation. Many of the opinions in these cases begin by summarizing a history of substantive consolidation, perhaps because of the absence of the term substantive consolidation in the Bankruptcy Code. Lacking any express provision in the Bankruptcy Code governing, or even mentioning, substantive consolidation, this Court too considers it necessary to first review the law that has developed regarding substantive consolidation in order to decide whether or not to grant the motion to dismiss count II of the complaint.

As noted, there is no Bankruptcy Code section that expressly creates a cause of action in favor of a Chapter 7 trustee or a debtor for substantive consolidation. The term substantive consolidation does not appear anywhere in the Bankruptcy Code or the Bankruptcy Rules. It is a judicially created doctrine that treats separate legal entities as if they were merged into a single entity, pooling the assets and liabilities of the two entities, so that the assets of the two entities may

result in a common fund available to satisfy the debts of both entities. Fundamentally, it is a judicial doctrine that has been applied by courts to ensure the equitable treatment of all creditors.

The authority to substantively consolidate two entities is frequently traced back to the U.S. Supreme Court's opinion in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215 (1941). However, a careful reading of Sampsell reveals that the Supreme Court did not actually hold substantive consolidation to be an available remedy for bankruptcy courts, nor did it address what showing would be necessary to invoke the doctrine of substantive consolidation. Instead, the issue in Sampsell was limited to determining the priority of a creditor's claim against a corporation relative to the claims of creditors of an individual debtor, *after* the bankruptcy court had already found that the individual debtor had fraudulently transferred property to the corporation that he had formed just prior to filing his bankruptcy case. The order of the bankruptcy court that authorized the administration of the corporation's property for the benefit of the individual debtor's creditors, "consolidating the estates," had not been appealed. Only the issue of the priority of one of the creditor's claims was before the court in Sampsell. Nonetheless, Sampsell is frequently cited as giving birth to the judicial doctrine of substantive consolidation.

Although Sampsell was decided before the Bankruptcy Code was enacted, those courts that have addressed substantive consolidation after the Bankruptcy Code was enacted, in a search for statutory authority for the doctrine, frequently cite to § 105 of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code states that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Nowhere does § 105(a) specifically authorize the consolidation of two debtors, let alone a non-debtor with a debtor, but its citation as statutory authority for substantive consolidation is widespread. See 2 Collier on

-19-

Bankruptcy ¶ 105.04[2] (15th ed. rev. 2009).

The Sixth Circuit Court of Appeals has not squarely held that a Chapter 7 trustee may use § 105 as the basis to bring a cause of action for substantive consolidation of a non-debtor entity with the bankruptcy estate. However, one opinion by the Sixth Circuit, First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Services, Inc.), 974 F.2d 712 (6th Cir. 1992), did consider whether a substantive consolidation order should be given retroactive effect nunc pro tunc for purposes of determining what date a preferential transfer was made. In dicta, the court in Baker & Getty quoted In re Evans Temple Church of God, 55 B.R. 976 (Bankr. N.D. Ohio 1986) regarding when substantive consolidation is warranted, as a prelude to discussing the nunc pro tunc issue that was actually before the court in Baker & Getty.

> "Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors. In any consolidated case, there is implicit in the Court's decision to consolidate the conclusion that the practical necessity of consolidation to protect the possible realization of any recovery for the majority of the unsecured creditors far outweighs the prospective harm to any particular creditor.
>
> "Thus, when a case is substantively consolidated, the Order for consolidation is, in effect, a determination by the Court that consolidation is warranted by the circumstances of the cases and that it is in the best interest of unsecured creditors to join the assets and liabilities of two debtors. It is, in effect, a statement by the Court that the assets and liabilities of one debtor are substantially the same assets and liabilities of the second debtor . . . ."

Baker & Getty, 974 F.2d at 720 (quoting Evans Temple Church of God, 55 B.R. at 981-82).

There are several other bankruptcy court and district court decisions within the Sixth Circuit that have also recognized a cause of action for a substantive consolidation. In addition to Sampsell and § 105, those decisions have relied greatly upon opinions from appellate courts of other circuits that have attempted to define what makes up a cause of action for substantive consolidation.

-20-

One of the most frequently cited appellate decisions discussing substantive consolidation, and one that was discussed in <u>Baker & Getty</u>, is <u>In re Auto-Train Corp.</u>, 810 F.2d 270 (D.C. Cir. 1987). In that case, Auto-Train was the Chapter 11 debtor. Railway Services was a wholly owned subsidiary of Auto-Train, but was not a debtor in a bankruptcy case. The Chapter 11 trustee for Auto-Train filed a motion to substantively consolidate Railway Services, the non-debtor, wholly owned subsidiary, with the Chapter 11 debtor, Auto-Train. The bankruptcy court conducted an evidentiary hearing and granted the motion effective nunc pro tunc back to the date that Auto-Train filed its Chapter 11 petition. The Chapter 11 trustee then filed a preference action against Midland-Ross to recover $499,671 that had been transferred by Railway Services to Midland-Ross prior to the time that Auto-Train filed its Chapter 11 petition. The bankruptcy court granted summary judgment in favor of the Chapter 11 trustee and against Midland-Ross. Midland-Ross appealed. The district court affirmed. Midland-Ross then appealed to the Court of Appeals for the D.C. Circuit. <u>Id.</u> at 272-73.

There were several issues addressed by the D.C. Circuit in <u>Auto-Train</u>. The entry of the substantive consolidation order by the bankruptcy court was not an issue on appeal. However, one of the issues on appeal did pertain to the nunc pro tunc aspect of the substantive consolidation order that had been granted. The court of appeals began its discussion of this issue by stating: "We assume, *arguendo*, that consolidation was proper. Although the Bankruptcy Code nowhere specifically authorizes the consolidation of separate estates, courts may order consolidation by virtue of their general equitable powers." <u>Id.</u> at 276 (citations omitted). The <u>Auto-Train</u> court explained that when courts order substantive consolidation, "it is typically to avoid the expense or difficulty of sorting out the debtor's records to determine the separate assets and liabilities of each affiliated

entity." Id. (citations omitted). The court further explained that before granting the remedy of substantive consolidation, "a court must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties." Id. (citations omitted). The court then identified two showings that must be made before substantive consolidation may be ordered: "The proponent must show not only a substantial identity between the entities to be consolidated, but also that consolidation is necessary to avoid some harm or to realize some benefit." Id. (citations omitted).

After identifying the two showings that must be made to warrant substantive consolidation, the Auto-Train court explained that if a creditor objects to substantive consolidation because it has relied on the separateness of the entities and will be prejudiced by their consolidation, then "the court may order consolidation only if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the harm." Id. at 276 (citations omitted). The court then returned to the propriety of granting such relief nunc pro tunc and observed that "a bankruptcy court must undertake an additional and slightly different balancing process" to give a substantive consolidation order a retroactive nunc pro tunc effect, because of "the risk of unpredictable shifts" in the dates of transfers that nunc pro tunc relief may create. Id. at 277.

> In light of these considerations, a court should enter a consolidation order *nunc pro tunc* only when it is satisfied that the use of *nunc pro tunc* yields benefits greater than the harm it inflicts. This inquiry will closely parallel that conducted with respect to consolidation. Because the consolidation proceeding will already have established a substantial identity between the entities to be consolidated, this inquiry begins with the proponent of *nunc pro tunc* making a showing that *nunc pro tunc* is necessary to achieve some benefit or avoid some harm.

Id. at 277. The Auto-Train court then held that the bankruptcy court had erred by making its substantive consolidation order retroactive, nunc pro tunc, to the date of Auto-Train's bankruptcy

-22-

case. Specifically, the court of appeals found that the bankruptcy court placed too much emphasis on the relationship between Auto-Train and its subsidiary, Railway Services, and not enough emphasis on Midland-Ross's reliance on the separate credit of Railway Services. Id. at 277-78.

The Auto-Train opinion does not set forth specific elements necessary to be pleaded to support a cause of action for substantive consolidation so much as it establishes a balancing test for determining whether substantive consolidation should be given retroactive effect once a creditor objects. In contrast to other substantive consolidation opinions, the Auto-Train balancing test only considers how creditors may have dealt with the two entities *after* a determination is first made that there is a substantial identity of the entities and that consolidation is necessary to avoid harm or realize a benefit. The Auto-Train analysis does not require as an element of a prima facie case for substantive consolidation any proof that creditors in any way dealt with the two entities as a single entity.

Shortly after Auto-Train, the Second Circuit Court of Appeals decided Augie/Restivo, 860 F.2d 515 (2d Cir. 1988). That case involved the substantive consolidation of two debtor entities, unlike Auto-Train, which involved substantive consolidation of a debtor with a non-debtor entity. Augie and Restivo were initially two unrelated wholesale bakeries. In 1984, they entered into an agreement to combine their operations with the idea that Augie's business would be wound up and Restivo would become the sole operating company. The two companies never complied with state merger laws nor did either of them dissolve. In 1986, both entities filed Chapter 11 petitions. After operating for some time in their Chapter 11 cases, the two debtor entities moved for substantive consolidation of their two bankruptcy cases. Union Bank, a secured lender for Augie, objected because with a substantive consolidation order, Union Bank's deficiency claim against its borrower,

-23-

Augie, would become subordinated to a super priority administrative expense claim in favor of MHIC, the lender to the other debtor, Restivo. The bankruptcy court overruled the objection and ordered substantive consolidation of the two bankruptcy estates. The district court affirmed. Id. at 516-17.

On appeal, the Second Circuit began its discussion by noting that there is no express statutory authority for substantive consolidation but instead it is "a product of judicial gloss." Id. at 518. The court stated in a footnote that courts have found the power to order substantive consolidation in § 105 of the Bankruptcy Code. The court cautioned that substantive consolidation should "be used sparingly" and explained that "[t]he sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." Id. (citations omitted). Next, Augie/Restivo looked at various substantive consolidation cases and the circumstances mentioned as relevant in those cases to determining whether equitable treatment of creditors will result from substantive consolidation. The court concluded its discussion of these cases by identifying two critical factors that emerge in all of these cases:

> An examination of those cases, however, reveals that these considerations are merely variants on two critical factors: (i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.

Id. (internal quotation marks and citations omitted).

The Second Circuit then discussed the application of these two factors in the circumstances of its case, and held that the facts did not justify substantive consolidation under either of these two factors. In analyzing the first factor, the court considered it important that Union Bank's loans to Augie were based solely upon Augie's financial condition and, at the times that the loans were made,

-24-

that Union Bank had no knowledge of any relationship between Augie and Restivo. "With regard to the first factor, creditors who make loans on the basis of the financial status of the separate entity expect to be able to look at the assets of their particular borrower for satisfaction of that loan." Id. at 518. The court concluded that the "course of dealing and expectations in the instant case do not justify consolidation." Id. at 519. The Augie/Restivo court then discussed the second factor regarding entanglement of the debtors' affairs and concluded that any "evidence of commingling of assets and business functions" between these two debtors did not approach the "level of hopeless obscurity" that had been found necessary in other cases to warrant consolidation. Id.

Auto-Train and Augie/Restivo are not entirely consistent with one another in their analysis of substantive consolidation actions. Auto-Train's analysis, which is largely dicta, requires a showing of both "substantial identity" and a need to avoid some harm or realize some benefit. Under this analysis, reliance by creditors upon the separateness of the entities only becomes relevant if a creditor objects, but is not part of a prima facie case for substantive consolidation. In contrast, Augie/Restivo appears to place the burden on the moving party to prove that creditors did not rely on the separateness of the entities, at least when the substantive consolidation request is based upon the first of the two prongs identified in Augie/Restivo. Further, unlike Auto-Train, it appears that under Augie Restivo, substantive consolidation may also be ordered in the alternative based upon a demonstration that creditors dealt with the two entities sought to be consolidated as a single economic unit even without a demonstration that the affairs of the two entities are so entangled that consolidation will benefit all creditors.

Lower courts in the Sixth Circuit have cited frequently to both the Auto-Train and the Augie/Restivo tests in their discussions of substantive consolidation. In the Eastern District of Michigan,

the District Court in <u>In re New Center Hospital</u>, 187 B.R. 560 (E.D. Mich. 1995), affirmed a summary judgment by a bankruptcy court imposing the remedy of substantive consolidation on non-debtor affiliates of the debtor. In that case, New Center Hospital was the Chapter 11 debtor. The United States, on behalf of the Internal Revenue Service and other federal agencies, brought an adversary proceeding to substantively consolidate certain non-debtors with the debtor. The bankruptcy court found that the assets and operations of the defendants had been extensively commingled with those of the debtor, that the debtor and the defendants were alter egos of one another, and that their business dealings were so inextricably intertwined that no entity that had extended credit to the debtor's alter egos could reasonably be said to be without notice. The bankruptcy court also found that the debtor's and non-debtors' banking activities had been conducted in an effort to defraud their creditors and avoid the payment of their legal obligations by such commingling. Further, the bankruptcy court found that the debtor and the non-debtors had disregarded the corporate entities of their respective corporations in the operation of their business. In affirming the bankruptcy court, the district court found that even the post-petition conduct of the debtor and the non-debtors was "shameful" and ultimately concluded that the bankruptcy court's summary judgment should be affirmed. <u>Id.</u> at 564-65.

In <u>New Center Hospital</u>, the district court pinned its authority to impose substantive consolidation on § 105(a) of the Bankruptcy Code without discussion. <u>Id.</u> at 567. The court noted that substantive consolidation was a judicially created remedy that should be used sparingly before turning its attention to the various tests that had been developed by other circuit courts to determine if there was a basis for substantive consolidation. The <u>New Center Hospital</u> court then observed that "[t]wo tests have been developed to determine if a basis for substantive consolidation exists." <u>Id.</u>

-26-

The court identified those two tests as the <u>Auto-Train</u> test and the <u>Augie/Restivo</u> test. The <u>New Center Hospital</u> court explained that <u>Augie/Restivo</u> set forth a disjunctive two prong test but went on to state that the second prong (i.e., whether the entities' affairs are entangled) requires a seven-part inquiry into the relationship of the entities as follows:

> (1) presence or absence of consolidated business or financial records;
> (2) unity of interest and ownership between the debtors;
> (3) the existence of parent and inter-corporate guarantees on loans;
> (4) degree of difficulty in segregating and ascertaining separate assets and liabilities;
> (5) existence of transfers of assets without observance of corporate or other legal formalities;
> (6) commingling of assets and business functions; and
> (7) the profitability of consolidation at a single principal location.

<u>Id.</u> at 569.

The district court found that the bankruptcy court's analysis of these seven elements supported the bankruptcy court's finding that the debtor and the non-debtors were "inextricably intertwined" and "entangled" so as to require substantive consolidation under the second prong of <u>Augie/Restivo</u>. <u>Id.</u> at 570. The <u>New Center Hospital</u> court also concluded that "under an <u>Auto-Train</u> analysis, the facts also support a finding of substantial identity – the alter ego issue." <u>Id.</u> Unfortunately, this last statement appears to conflate the various substantive consolidation "tests" with an analysis of principles of state corporate law and also state alter ego law in Michigan.

In <u>Simon v. Brentwood Tavern, LLC</u> (<u>In re Brentwood Golf Club, LLC</u>), 329 B.R. 802 (Bankr. E.D. Mich. 2005), the bankruptcy court granted summary judgment for a Chapter 11 trustee in an adversary proceeding brought to substantively consolidate a non-debtor entity with the debtor. The debtor was a limited liability company that owned and operated a golf course. The defendant was another limited liability company with the same ownership as the debtor. The defendant was a tavern that sold liquor and food at the golf course and clubhouse owned by the debtor. <u>Id.</u> at 805.

The adversary proceeding apparently contained several theories of liability. The court first dealt with whether or not the defendant tavern was an alter ego of the debtor golf course and clubhouse. The court reviewed various principles under Michigan corporate law concerning the application of an alter ego analysis. Id. at 808-09. The court concluded that these two limited liability companies were alter egos under applicable Michigan law, and held that "[b]ecause Tavern is the alter-ego of Debtor, this Court is piercing Tavern's corporate veil." Id. at 809-11. The court then explained that

> [o]nce Tavern's corporate veil is pierced, there is no need for a determination that the entities need to be substantively consolidated because the assets and operations of one are, as a matter of law, the assets and operations of the other and, thus, any alleged assets of Tavern are property of the estate.

Id. at 811.

Even though Brentwood was decided based upon a state law theory of piercing the corporate veil, the Brentwood court in dicta also went on to separately consider substantive consolidation. Like many other cases, Brentwood observed that § 105(a) of the Bankruptcy Code provides the authority to order substantive consolidation. Id. The court then noted that the Sixth Circuit Court of Appeals has not set forth a specific test for determining whether to impose substantive consolidation. Id. at 811. However, the Brentwood court found that the Sixth Circuit did approve of the substantive consolidation doctrine in dicta in Baker & Getty even if it had not set forth the elements necessary to bring an action for substantive consolidation. Id. at 811-12. Lacking a statement of the elements of substantive consolidation, but noting the Sixth Circuit's approval of the doctrine in Baker & Getty, the Brentwood court proceeded in dicta to consider both the Augie/Restivo test and the Auto-Train test. The Brentwood court concluded that under either the Augie/Restivo test or the Auto-Train test, substantive consolidation of the non-debtor was warranted and supported the grant of summary judgment. Id. at 812-15.

More recently, the bankruptcy court in <u>Gold v. Winget</u> (<u>In re NM Holdings Co.</u>), 407 B.R. 232 (Bankr. E.D. Mich. 2009), had an adversary proceeding before it that sought substantive consolidation against a number of non-debtor entities. The defendants in that case claimed that the Bankruptcy Court did not have the power to order substantive consolidation. The court held that § 105(a) does provide a statutory basis for substantive consolidation and explained that subsequent Supreme Court cases have not either repealed <u>Sampsell</u> or held that substantive consolidation is not an available remedy for the bankruptcy court. <u>Id.</u> at 273-77.

Looking to cases outside the Sixth Circuit, in addition to the <u>Auto Train</u> and <u>Augie/Restivo</u> tests, another circuit court of appeals has also set forth certain principles that it believes should be considered in reviewing any request for substantive consolidation. In <u>In re Owens Corning</u>, 419 F.3d 195 (3rd Cir. 2005), the Third Circuit Court of Appeals discussed in depth the history of substantive consolidation and canvassed the various cases that have acknowledged substantive consolidation as a possible remedy. <u>Id.</u> at 205-09. The <u>Owens Corning</u> opinion correctly observed that "most courts slipstreamed between two rationales - those of the Second Circuit in <u>Augie/Restivo</u> and the D.C. Circuit in <u>Auto-Train</u>." <u>Id.</u> at 207. The Third Circuit then explained its own view of substantive consolidation. It began by noting that substantive consolidation is an equitable remedy. <u>Id.</u> at 210. However, it rejected the "checklist" approach used by many courts because it "often result[s] in rote following of a form containing factors where courts tally up and spit out a score without an eye on the principles that give the rationale for substantive consolidation." <u>Id.</u> (citation omitted).

The <u>Owens Corning</u> court then identified certain principles that it considered to be important for a court to consider in deciding whether substantive consolidation is warranted. Those principles include the general expectation under state law, the Bankruptcy Code, and commercial markets, "that

courts [will] respect entity separateness absent some compelling circumstances . . . ." Id. at 211.

Further, the harms that substantive consolidation may remedy are nearly always caused by the debtors themselves by disregarding their own separateness, in contrast to the harms that are caused by creditors, which are typically remedied by specific provisions in the Bankruptcy Code (e.g., §§ 510, 544, 547 and 548). Mere benefit to the administration of a bankruptcy estate should not itself be considered sufficient to warrant substantive consolidation. Because substantive consolidation is both extreme and imprecise, it should only be used rarely, where there are no other remedies available under the Bankruptcy Code. Finally, substantive consolidation should not be used as a weapon to tactically disadvantage a group of creditors, but instead should only be used defensively to remedy an identifiable harm that is caused by entities that entangle their affairs. Id. After reviewing those principles in depth, the Owens Corning court distilled them to the following:

> The upshot is this. In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

Id. at 211.

A number of observations can be made about the various substantive consolidation cases. First, a cause of action for substantive consolidation is not the same as a cause of action to pierce a corporate veil, nor is it the same as a cause of action to determine whether, under state corporate law, there is a basis to find that two or more corporations are alter egos of one another. Those are different causes of action than substantive consolidation, although sometimes the courts have discussed them together and have noted certain similarities of these causes of action. Second, there is an independent, judicially created cause of action for substantive consolidation that the courts have

-30-

recognized. Third, there is no express statutory authority for substantive consolidation. Section 105 is the most frequently cited statutory authority, but even its use seems expansive in light of the Sixth Circuit Court of Appeals' statements that § 105 may be used only to implement powers already expressed in the provisions of the Bankruptcy Code, not add to those powers or create rights that Congress did not expressly confer. Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. Partnership), 934 F.2d 723, 725 (6th Cir.1991) (citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)). "[T]he Bankruptcy Code is the product of substantial consideration by Congress, and is not prone to judicial tinkering . . . ." Palmer v. I.R.S. (In re Palmer), 219 F.3d 580, 586 (6th Cir. 2000) (citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989)). Despite such concerns, the weight of the case law holds that § 105 can be used to order substantive consolidation, even of a non-debtor with a debtor. Fourth, even those courts that impose substantive consolidation consistently observe that it is an extraordinary remedy and one that is to be used sparingly. The reason for such reluctance is obvious since the doctrine authorizes a court to look past the limited liability that is a hallmark of corporate law in the United States and the legal separateness of an entity that it provides for. Fifth, perhaps because it is a judicially created doctrine, courts have endeavored to find precision by creating a myriad of "tests" for substantive consolidation. As a result, substantive consolidation has become a "checklist" or "factor" counting exercise in many cases. But even those opinions that have developed these tests offer little guidance as to the probative value of each single item or factor, or the relative importance of each of the checklist items or factors to one another. Sixth, the dependence upon checklists and factors leaves the impression of an untethered, ad hoc approach in the case law which can greatly diminish predictability in the law. Seventh, the absence of a clear rule of law regarding substantive consolidation, combined with the premise that

-31-

substantive consolidation is an equitable remedy, encourages parties to treat the bankruptcy court as a "roving commission to do equity." See generally Hon. Joe Lee 2 Bankr. Service Lawyers Ed. § 12:508 (2009) (subtitled "Roving commission to do equity," and collecting cases addressing the use of § 105(a) to create substantive rights); Timothy E. Graulich, Substantive Consolidation – A Post-Modern Trend, 14 Am. Bankr. Inst. L. Rev. 527 (Winter 2006) (discussing the development and expansion of the so-called "liberal" or "modern" trend of substantive consolidation, detailing the adverse consequences of that trend, and advocating use of the Third Circuit's decision in Owens Corning as a template for future decisions). Eighth, actions to substantively consolidate non-debtor entities raise serious due process considerations for parties that continue to transact business with a non-debtor entity where such creditors are not parties to any action brought to substantively consolidate such non-debtor with a debtor entity. Finally, those due process considerations are further exacerbated by the inevitable need to determine whether substantive consolidation, if warranted at all, is to be made on a nunc pro tunc basis, further exposing parties presently doing business with a non-debtor entity to shifting and incalculable risks at the time that they do business with such entity.

The purpose of reviewing the divergent case law regarding substantive consolidation and the various tests that have been adopted and applied is not to be critical of the cases that have considered these issues. Nor is the recitation of the complex issues that emerge from these cases in any way intended to suggest that a court should refuse to ever order substantive consolidation because of the murkiness of the case law. Rather, the point of this exercise is twofold: first, to illustrate the difficulty in finding the correct rule of law to apply to a substantive consolidation action; and, second, to provide a framework for the Court to evaluate the Trustee's substantive consolidation complaint

in this case against the Rule 12 (b)(6) standard under <u>Twombly</u> for a motion to dismiss. Before turning then to the allegations in the Trustee's complaint, the Court adopts the following principles regarding the law of substantive consolidation that will control the Court's decision regarding the motion to dismiss count II in this adversary proceeding.

There is sufficient settled authority for a bankruptcy court to impose the equitable remedy of substantive consolidation, even on a non-debtor, in a rare case. But it is an extraordinary remedy to be utilized only where there are no other adequate remedies, particularly where the entity sought to be consolidated is not itself already a debtor in a bankruptcy case. Until the Supreme Court or the Sixth Circuit Court of Appeals enunciates a standard to determine when the elements of substantive consolidation are present, this Court will only substantively consolidate a non-debtor entity with a debtor where it is shown that either: (i) the debtor and the non-debtor entity in their pre-petition conduct disregarded the separateness of their respective entities so significantly as to lead their creditors to treat them as one legal entity; or (ii) that post-petition, the assets and liabilities of the debtor and the non-debtor entity sought to be consolidated are so hopelessly scrambled and commingled that it is impossible to separate them and tell them apart thereby resulting in harm to all creditors. The identification of these two alternative circumstances warranting substantive consolidation, one pre-petition and one post-petition, is not, in this Court's view, inconsistent with the circumstances that the Sixth Circuit identified in dicta as warranting substantive consolidation. In fact, in <u>Baker & Getty</u>, the Sixth Circuit noted that in that case, there was evidence both that the creditors of the two entities treated them as one entity and that the two entities were "hopelessly intertwined." <u>Baker & Getty</u>, 974 F.2d at 720. In sum, the Court adopts the <u>Owens Corning</u> analysis.

The Court will next examine count II of the complaint in this adversary proceeding in light

of the principles of law set forth above. What facts does the complaint allege that, if taken as true, demonstrate that pre-petition, the Debtors and the non-debtor corporate defendants disregarded their own separateness so significantly as to lead their creditors to treat them as one legal entity? The complaint contains the following allegations that may arguably relate to this issue:

- The officers and directors of the ASIMCO companies "managed" the Debtors and non-debtors as divisions of a single large company (paragraph 24).

- The Debtors and non-debtors have the same board of directors (paragraph 25).

- The Debtors did not have separate board meetings but instead a "super board" of all of the Debtors and non-debtors met quarterly (paragraphs 25, 70(b)).

- The "ultimate goal of the super board" was to do what was best for all of the ASIMCO companies and not necessarily any particular company (paragraph 26).

- When the super board considered whether the Debtors should file Chapter 11, one of the considerations was the potential for non-payment of loans to ASIMCO International (paragraph 28).

- When the super board considered whether the Debtors should file Chapter 7, the board considered the impact upon Yizheng and the other ASIMCO companies (paragraph 29).

- The officers and directors of the ASIMCO companies "acted" as if the companies "were merely divisions of one big company" (paragraphs 30, 70(c)).

- The ASIMCO companies decided that some work should go to a Chinese company and not to Assembled Camshaft because it would be a "better place to put the work because of cost considerations" (paragraph 31).

-34-

- The ASIMCO companies determined that either Assembled Camshaft or Grand Haven should refurbish a grinder for Yizheng and, "upon information and belief," they were not paid for their work (paragraph 32).

- Yizheng and the Debtors were "considered" to be part of the "same camshaft division of ASIMCO" (paragraph 33).

- Yizheng and the Debtors were "regularly treated" as divisions of a single company at board meetings and in presentations to lenders and auditors (paragraph 33).

- Yizheng and the Debtors "regularly exchanged" employees, products, money, work and equipment "as if they "were all part of the same company" (paragraph 34).

- The Debtors also "regularly exchanged" employees and money with ASIMCO International and ASIMCO International loaned a substantial amount of money to the Debtors with no loan documents (paragraph 35).

- Even though the Debtors had by-laws and other corporate organizational documents, Assembled Camshaft never had its own shareholder meetings (paragraph 36).

- The Debtors and the other ASIMCO companies "presented" themselves to "the outside world" as one large company on their website (paragraph 37).

- Some customers of the Debtor and non-debtor entities "thought ASIMCO was one large company" and the Debtors and other ASIMCO companies "cultivated this impression" to create business (paragraph 38).

- The Debtors provided cash, machines and management expertise to Yizheng (paragraph 51).

- ASIMCO Holding is the ultimate parent of the Debtors and the non-debtor corporate

defendants (paragraph 68).

- The Debtors did Yizheng a "costly favor" by writing off a "sizeable amount" (paragraph 50).

- The Debtors and non-debtors used the same employees as one another as needed (paragraph 70(a)).

- The Debtors and non-debtors exchanged employees, products, money, work and equipment with one another "as if [they] were part of the same company" (paragraph 70(d)).

- Management "consistently treated" the Debtors and non-debtors as if they were all part of a larger company called ASIMCO (paragraph 71).

- The Debtors and non-debtors transferred assets without observance of corporate or legal formalities (paragraph 72).

- The Debtors and non-debtors "transferred" employees from one company to another on an as-needed basis without a written contract (paragraph 73).

- The Debtors and non-debtors loaned or transferred money among each other without loan documents (paragraph 74).

- The Debtors and Yizheng shared business and, "upon information and belief," no contract existed (paragraph 75).

- The Debtors and Yizheng purchased and shared equipment with each other without a written contract (paragraph 76).

The fact that the Debtors and the non-debtors conducted their boards of directors meetings together does not by itself prove a disregard of the separateness of the entities at such meetings. The

complaint does not allege that at these board meetings, the respective boards of directors took action that disregarded the separateness at the entities, but only that the board meetings were conducted jointly. Nor is the conclusory allegation that these related companies were "managed" in a way designed to "do what was best for all of them" probative of any disregard of the separateness of these entities so as to lead their creditors to treat them as one entity. The fact that the board of directors considered the impact of its decision to have the Debtors file bankruptcy upon the non-debtors does not tend to show a disregard of the separateness of the entities, but instead may arguably tend to show a recognition that the entities were separate and distinct. Nor does the conclusory allegation that these entities were "managed" as though they were "divisions" of "one large company," even if true, evidence in any way a disregard of the separateness of the entities. The labels of "managed" and "divisions" are not probative one way or the other about whether the conduct of these entities showed that they disregarded their separateness in a way that misled their creditors.

Similarly, the fact that some *customers* of these entities viewed them as "one large company" does not tend to show that the Debtors and non-debtors disregarded the separateness of their entities so as to lead their *creditors* to treat them as one entity. The complaint contains no allegations that the Debtors and non-debtors failed to keep separate bank accounts, or that they failed to fully or accurately record their financial transactions with their creditors in separate books and records. Nor does the complaint allege that any of the Debtors or non-debtors disseminated any financial or other information to their creditors in a manner calculated to mislead their respective creditors about which of those entities would be legally responsible for any debts incurred by such entities. The closest the complaint comes to making such an allegation is the vague statement in paragraph 37 that the Debtors and other ASIMCO companies "presented" themselves as "one large company" on their website. But

this allegation does not state what information on the website might mislead any of their creditors into believing that the Debtors and non-debtors were not separate entities. Nor is there any allegation that any creditors of any of these Debtors or non-debtors somehow believed that they were not separate entities or relied on them as one single entity. In fact, the complaint makes no allegations at all about either how the Debtors or non-debtors dealt with their creditors, or how their creditors dealt with them.

Instead, the allegations in the complaint about the pre-petition conduct of the Debtors and the non-debtors focus on the transacting of business *inter se* among the Debtors and the non-debtors. Specifically, the complaint alleges that they loaned each other money, transferred assets to each other and exchanged employees, and that these transactions among them were either not documented or lacked adequate consideration. If all of those allegations are true, then the Trustee may well be entitled to a judgment against one or more of the non-debtor corporate defendants to recover a debt owed, or to avoid a preferential transfer or a fraudulent transfer. But the presence of such transactions, even when coupled with the conclusory assertion that the "goal" was to do what was best for the ASIMCO family of companies, is insufficient to prove that the Debtors and the non-debtors engaged in pre-petition conduct that disregarded the separateness of their respective entities so significantly as to lead their creditors to treat them as one legal entity. In short, the Trustee may have valid causes of action against the non-debtor corporate defendants. But the Trustee has not pleaded sufficient facts to state a claim for substantive consolidation of the Debtors and the non-debtors based upon the pre-petition conduct of the Debtors and the non-debtor corporate defendants.

What facts does the complaint allege which, if taken as true, demonstrate that post-petition, the assets and liabilities of the Debtors and the non-debtor corporate defendants are so hopelessly

scrambled and commingled that it is impossible to separate them and tell them apart, thereby resulting in harm to all creditors?  The complaint contains the following allegations that may arguably relate to this issue:

- The Debtors and non-debtor corporate defendants had combined financial statements (paragraph 78).

- When the Debtors' and non-debtors' books and records were audited, they were audited together (paragraph 79).

- "Presentations" made to the super board showed financial information of the Debtors and non-debtors collectively (paragraph 80).

- Because the Debtors and non-debtors made numerous loans to each other that were not recorded, it is difficult, if not impossible, to accurately determine the liabilities among them (paragraph 84).

- Because employees worked for both the Debtors and for the non-debtors, it is difficult to separate which company truly employed them so as to determine the amount of money owed by the Debtors and non-debtors to each other for wages that were paid to such employees (paragraph 87).

- As a result of the commingling of money, assets and employees "it is impossible to segregate the assets and liabilities" of the Debtors and non-debtors (paragraph 88).

The fact that the Debtors and non-debtors had combined financial statements does not tend to prove that the assets and liabilities of the Debtors and non-debtors are hopelessly scrambled and commingled.  Nor does the fact that when the Debtors and non-debtors were audited, they were audited together.  Nor does the fact that presentations of financial information to the super board of

directors contained collective financial information. None of those facts, if all true, are either uncommon or remarkable in any way. They do not tend to show that the assets and liabilities of the separate entities that are reflected in such consolidated financial statements are hopelessly scrambled or commingled in any way. The complaint does not allege that either the Debtors or the non-debtors failed to record and keep books and records of their financial transactions. The crux of the Trustee's allegations regarding the books, records and financial statements of the Debtors and non-debtors is that they were, for some purposes at least, kept in a combined or consolidated manner, and that such books, records and financial information were presented, at least for some purposes, in a collective way. But that is a far cry from alleging that because of the fact that the books, records and financial statements were kept in a combined or consolidated fashion, the assets and liabilities of the Debtors and non-debtors are hopelessly scrambled and commingled so that it is now impossible to tell them apart.

The Trustee does plead that he cannot determine how much the Debtors and non-debtors owe to *one another* for wages that their employees have received and for loans that they have made to *one another*. If true, those allegations may require a remedy. They may result in the imposition of liability among the Debtors and non-debtors and even among the officers and directors of the Debtors. But saying that the Trustee cannot determine what these entities may owe to *one another* regarding the transactions among them *inter se* is not the same thing as saying that the assets and liabilities of the Debtors and non-debtors are so hopelessly scrambled and commingled that it is impossible to separate them and tell them apart. The Trustee does not allege that because the Trustee cannot determine how much the Debtors and non-debtors may owe to each other that he is unable to determine how much the Debtors owe to their creditors other than the non-debtors. The Trustee does

-40-

not allege that there is any difficulty in determining what assets the Debtors own or what liabilities they may owe, except for the allegation that the Trustee cannot determine how much the Debtors and non-debtors owe to one another. That is not enough. Assuming the Trustee cannot determine how much the Debtors and non-debtors owe to one another does not demonstrate that the assets and liabilities of the Debtors and the non-debtor defendants are hopelessly scrambled and impossible to separate.

The complaint is long, but it does not allege that the Trustee has been unable to determine the assets and liabilities of the Debtors post-petition in any way other than ascertaining the amounts that might be owed by the non-debtors to the Debtors and vice versa. In other words, the complaint does not allege that the Trustee has been unable to determine what the Debtors owe to creditors and parties other than the ASIMCO related companies. Nor does the complaint allege that the Trustee has been unable to administer this case. To the contrary, the Trustee has been able to administer the estates of the Debtors, having filed 80 adversary complaints based on Chapter 5 causes of action even before filing this case requesting substantive consolidation of the Debtors. The Trustee does not say he has somehow been stymied in his ability to determine the assets and liabilities of the Debtors because of any absence of loan documents with the non-debtor defendants or the absence of contracts with the non-debtor defendants regarding their exchange of employees. Even if true, the allegations regarding the Trustee's difficulty in determining how much the Debtors and the non-debtor defendants owe one another are just not sufficient to conclude that post-petition the assets and liabilities of the Debtors and non-debtors are so hopelessly scrambled that it is impossible to tell them apart. The Trustee does allege in conclusory terms (paragraph 88) that it is "impossible to segregate the assets and liabilities" of the Debtors and the non-debtor corporate defendants. But the complaint just does not contain

-41-

sufficient factual matter to enable the Court to conclude that the Trustee's claim is plausible on its face. Even if all of the allegations taken in these paragraphs are true, they do not make out a case for substantive consolidation of the non-debtor defendants with the Debtors because the assets and liabilities of all these entities are so hopelessly scrambled and commingled that separating them from each other is impossible and thereby hurts all of the creditors.

The Court has already noted that many cases recognize that there is authority to bring a substantive consolidation action even against a non-debtor. They trace this authority to <u>Sampsell</u>, 313 U.S. 215, and § 105. The Court does not hold that a debtor can never bring a substantive consolidation action against a non-debtor entity, but only that the complaint in this case does not meet the <u>Twombly</u> standard of pleading. It is not plausible that the Trustee will be entitled to relief by demonstrating all of the facts set forth in this complaint, as to the substantive consolidation count against the non-debtor corporate defendants. The Court therefore holds that count II of the complaint must be dismissed.[3]

---

[3] Although unnecessary to the Court's decision, it is worth noting that there are many consequences and difficulties that can flow from a decision to substantively consolidate a non-debtor entity with a debtor. In this case, the four Debtors themselves have not even been substantively consolidated with one another. Their estates are only jointly administered. The Trustee has been administering assets in each of them for two years. Further, before the Trustee was appointed, most of the tangible assets of each of the Debtors were sold during the Chapter 11 case. If substantive consolidation were now ordered in these cases, as requested by the Trustee, it would undoubtedly raise troubling questions of how the creditors of the non-debtors that are substantively consolidated could be treated equitably since the proceeds from the sales of assets of the Debtors have already been disbursed to certain of the Debtors' creditors. What substantive consolidation may mean in these circumstances is that the assets of the non-debtor corporate defendants would now be brought into these Debtors' estates so that the creditors of the Debtors could share in the proceeds of those assets. But it would not necessarily work the other way around. The assets of these Debtors have already been disposed of in § 363 sales and by payment of post-petition secured debt in the Chapter 11 cases. A substantive consolidation remedy now would not enable the Trustee to go back and somehow recover from those creditors the proceeds that they have already received in these bankruptcy cases so that the creditors of the

-42-

To recap, the Court denies the motion to dismiss ASIMCO Holding and Yizheng for lack of service of process. The Court denies the motion to dismiss ASIMCO Holding for lack of personal jurisdiction. The Court need not consider the motion to dismiss Lim for lack of personal jurisdiction because he has never been served with the complaint. The Court denies the motion to dismiss count I against the individual defendants. The Court grants the motion to dismiss count II against the corporate defendants. The Court will enter a separate order consistent with this opinion.

**For publication**


Signed on September 01, 2009

                                 /s/ Phillip J. Shefferly
                              Phillip J. Shefferly
                              United States Bankruptcy Judge

---

non-debtors that are being substantively consolidated could also share in those proceeds. Further, it is worth noting that two of the non-debtor entities sought to be consolidated in this case are foreign corporations. ASIMCO Holding is a Cayman Islands corporation. Yizheng is a Chinese corporation that operates its business in China. If substantive consolidation stems from a policy of doing equity for creditors, it would necessarily have to consider the effect upon creditors of the businesses in the Cayman Islands and in China before it could be applied. The Trustee does not make any allegations about how these foreign corporations have dealt with such creditors, nor explain how substantive consolidation of such foreign companies could be accomplished. While those considerations are important, they of course are irrelevant to whether the Trustee's complaint sufficiently states a cause of action for the equitable remedy of substantive consolidation. Therefore, the Court does not consider them today. But they do illustrate the point that substantive consolidation, as a judicially created remedy that appears nowhere in the Bankruptcy Code, should be used only in extraordinary and rare circumstances where other remedies are insufficient.